1

2

3

4

5

6        **UNITED STATES DISTRICT COURT**

7        **DISTRICT OF NEVADA**

8

9   EDWARD LEE BEETS,                         )
                                              )
10            Petitioner,                     )        2:04-CV-00085-KJD-GWF
                                              )
11   vs.                                      )
                                              )        **ORDER**
12   E.K. McDANIEL, *et al.*,                 )
                                              )
13            Respondents.                    )
                                              )
14   _____ /

15        Before the court for decision are respondents' motion to dismiss petitioner Edward Lee

16   Beets's amended petition for writ of habeas corpus and petitioner's motion for stay and abeyance.

17   Docket ##72 and 77.  Both motions are opposed.  Having considered all of points and authorities in

18   support of and in opposition to the motions, the court finds and concludes as follows.

19        **I.    Background**

20        On August 3, 1989, a jury in the District Court for Clark County, Nevada, found Beets guilty

21   of burglary; first degree murder with use of a deadly weapon, victim 65 years of age or older;

22   attempted murder with use of a deadly weapon; mayhem with use of a deadly weapon; first degree

23   kidnaping with use of a deadly weapon; sexual assault with use of a deadly weapon; and two counts

24   of sexual assault with a minor.

25        When the jury was unable to reach a verdict after the initial penalty hearing, the Nevada

26   Supreme Court ordered a three judge panel to conduct a penalty hearing pursuant to Nev. Rev. Stat.

1   175.556.  After the second penalty hearing, the three judge panel found no mitigating circumstances

2   and the following four aggravating circumstances:  (1) the murder was committed by the defendant

3   while under a sentence of imprisonment; (2) the murder was committed by the defendant who was

4   previously convicted of a felony involving the use or threat of violence to another; (3) the murder

5   was committed while the defendant was engaged in the commission of sexual assault; and (4) the

6   murder was committed while the defendant was engaged in the commission of burglary.

7          On November 7, 1989, appellant was sentenced to death.  On December 20, 1991, the

8   Nevada Supreme Court affirmed Beets's conviction as to all counts and his death sentence.  *Beets v.*

9   *State*, 107 Nev. 957, 821 P.2d 1044 (1991).

10          On September 3, 1993, Beets filed a petition for writ of habeas corpus in the state district

11   court in which he was convicted and sentenced.  Within the context of that proceeding, Beets filed a

12   motion for partial summary judgment in which he argued that his death sentence is invalid because

13   the Nevada Supreme Court's decision on his direct appeal did not include an opinion in which a

14   majority of the court concurred that the penalty-phase jury's consideration of improper aggravating

15   circumstances amounted to harmless error.  The state district court denied the motion; and, the

16   Nevada Supreme Court rejected, on jurisdictional grounds, an interlocutory appeal of that denial.

17   *Beets v. State*, 110 Nev 339, 871 P.2d 357 (1994).

18          On September 29, 2000, the state district court held an evidentiary hearing on Beets's

19   petition.  On February 20, 2002, the state district court entered an order denying relief.  Beets

20   appealed.  On October 7, 2003, the Nevada Supreme Court affirmed the lower court's denial of his

21   petition, but directed Beets to file a separate petition in state district court raising a claim pursuant to

22   *Atkins v. Virginia*, 536 U.S. 304 (2002).

23          Beets then filed a petition for rehearing that the Nevada Supreme Court denied on December

24   23, 2003.  Beets initiated this action on January 23, 2004, and his *Atkins* proceeding in the state

25   district court on February 5, 2004.  On January 2, 2008, after concluding court-authorized discovery,

26

2

1  Beets filed the amended petition for writ of habeas corpus that is the subject of respondents' motion

2  to dismiss.  According to Beets, the state court *Atkins* proceeding remains pending.

3          **II.**       **Discussion**

4              A.      *Motion to Dismiss*

5       With their motion to dismiss, respondents argue that several of the claims in Beets's habeas

6  petition must be dismissed because either the claims have been filed in an untimely manner or they

7  have not been exhausted in the state courts.

8       With respect to timeliness, the Antiterrorism and Effective Death Penalty Act of 1996

9  (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court.  28 U.S.C. §

10  2244(d)(1).  The one-year period begins to run from the latest of four possible triggering dates, with

11  the most common being the date provided by subparagraph (A) – *i.e.*, the date on which the

12  petitioner's state court conviction became final (by either the conclusion of direct appellate review or

13  the expiration of time for seeking such review).  *Id.*  Statutory tolling of the one-year time limitation

14  occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending.

15  28 U.S.C. § 2244(d)(2).

16       Respondents concede that the initial petition filed on January 23, 2004, was timely under §

17  2244(d)(1).  Respondents argue, however, that many of Beets's habeas claims are time-barred from

18  federal court review because he presented them to this court for the first time in his amended petition

19  (which, as noted, was not filed until January 2, 2008) and those claims do not "relate back" to the

20  initial petition.  In response, Beets points out that his *Atkins* proceeding is still pending in state court,

21  and argues that the proceeding tolls the statute of limitations under 28 U.S.C. § 2244(d)(2).

22       While respondents contend that Beets failed to comply with the Nevada Supreme Court's

23  mandate and applicable statutory procedures in filing his *Atkins* action, this court finds those

24  arguments to be largely without merit and concludes that the proceeding is properly construed as a

25  collateral attack on the judgment as contemplated by § 2244(d)(2).  *See Moore v. Cain*, 298 F.3d

26  361, 366 -367 (5th Cir. 2002) (". . . Congress meant to include within the scope of § 2244(d)(2) those

1  'properly filed' applications, without respect to state nomenclature or the nature of the petitioner's

2  state confinement, that, pursuant to the wording of § 2244(d)(2), seek 'review' of the 'pertinent

3  judgment or claim.'").  As such, the proceeding has served to toll the one-year filing period starting

4  February 5, 2004.  In addition, Beets has established to the satisfaction of the court that the

5  proceeding was still pending when he filed of his amended petition.  Thus, all the claims in his

6  amended petition are timely.

7         As for exhausting state court remedies, Beets concedes that his petition contains several

8  claims that have not been fairly presented to the Nevada courts.  In *Rose v. Lundy*, the Supreme

9  Court held that a mixed petition, i.e., a petition raising both exhausted and unexhausted claims, must

10 be dismissed for failure to completely exhaust available state remedies.  455 U.S. 509, 518-22

11 (1982).  The Court instructed, however, that the district courts must give a petitioner "the choice of

12 returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to

13 present only exhausted claims to the district court."  *Id.* at 510.  Applying *Lundy*, the Ninth Circuit

14 has consistently held that "outright dismissal without leave to amend of the petitioner's federal

15 habeas petition was improper," and "that district courts must provide habeas litigants with the

16 opportunity to amend their mixed petitions by striking their unexhausted claims."  *Tillema v. Long*,

17 253 F.3d 494, 503 (9th Cir. 2001) (internal quotation marks omitted); *see also Anthony v. Cambra*,

18 236 F.3d 568, 574 (9th Cir. 2000).

19        In addition, the Supreme Court has held that, to prevent petitioners from "forever losing their

20 opportunity for any federal review of their unexhausted claims" due to AEDPA's one-year time

21 limitation, a district court has discretion to stay a mixed petition.  *Rhines v. Weber*, 544 U.S. 269,

22 275 (2005).  The Court in *Rhines* not only approved the use of the stay and abeyance procedure, it

23 suggested that, in some circumstances, the district court would be guilty of an abuse of discretion if

24 it failed to employ the procedure:

25            [I]t likely would be an abuse of discretion for a district court to deny a stay
         and to dismiss a mixed petition if the petitioner had good cause for his failure to
26        exhaust, his unexhausted claims are potentially meritorious, and there is no indication

1    that the petitioner engaged in intentionally dilatory litigation tactics.  In such
     circumstances, the district court should stay, rather than dismiss, the mixed petition.
2

3   *Id*. at 278 (internal citation omitted).  If, on the other hand, the court determines that a stay is not

4   appropriate, the petitioner should be afforded the *Lundy* option of abandoning unexhausted claims

5   "if dismissal . . . would unreasonably impair [his] right to obtain federal relief."  *Id*. (citing *Lundy*,

6   455 U.S. at 520).

7       *Rhines* does not state or suggest that every unexhausted claim in the petition must satisfy,

8   individually, the "good cause" and "potentially meritorious" requirements before a stay will be

9   permitted.  Indeed, as this court has noted in the past, the rationale for permitting a stay would apply

10  with more force to a petition in which only one of the unexhausted claims meets the *Rhines*

11  requirements, but is clearly meritorious, than it would to a petition in which all of the unexhausted

12  claims meet the *Rhines* requirements, but none are more than *potentially* meritorious.  Thus, the

13  efficient approach is for this court to address Beets's motion for stay and abeyance before reaching

14  respondents' exhaustion arguments as applied to individual claims.  If the court determines that a

15  *Rhines* stay is warranted, then it need not conduct a claim-by-claim exhaustion analysis.

16                    B.     *Stay and Abeyance*

17      As discussed above, the one-year filing period under AEDPA has been tolled by Beets's

18  *Atkins* proceeding since February 5, 2004, and continues to be so as long as that action remains

19  pending in the state courts.  In addition, because Beets is also allowed statutory tolling from the date

20  of AEDPA's enactment (April 24, 1996) until at least the conclusion of his first state post-conviction

21  proceeding on December 23, 2003, he has arguably expended only about a month and a half of his

22  one-year filing period.  As such, this court could conceivably employ the procedure recommended in

23  *Lundy* – i.e., dismissal without prejudice pending state court exhaustion (455 U.S. at 552) – without

24  imperiling Beets's opportunity to return to federal court.

25      Even so, this court takes direction from *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), where the

26  Supreme Court contemplated the possibility that a petitioner might litigate in state court for years

5

1   only to find out too late that his state proceeding was not "properly filed" and, therefore, did not toll

2   the one-year statute of limitations.  544 U.S. at 416.   The Court recommended that a petitioner, to

3   avoid that predicament, file a "protective" petition in federal court and ask the court for a stay and

4   abeyance.  *Id.* (citing *Rhines*).  Thus, this court shall treat Beets's pending petition as a protective

5   petition and, accordingly, determine whether he is entitled to a stay under *Rhines*.

6         With his motion for stay and abeyance, Beets identifies about a dozen claims (including

7   Claim Two, an ineffective assistance of trial counsel claim comprised of several sub-claims) for

8   which he argues the *Rhines* requirements are met.  One of those, Claim One, is the claim for relief

9   based on *Atkins* that he is currently litigating in state court.

10        The Supreme Court decided *Atkins* a few months after the state district court had denied

11  Beets's first petition for post-conviction relief, but before Beets had filed his opening brief in his

12  subsequent Nevada Supreme Court appeal.   Beets then raised an *Atkins* issue in the opening brief.

13  As mentioned above, the Nevada Supreme Court, in deciding the appeal, directed Beets to raise his

14  *Atkins* claim in a separate petition in state district court, which he did in a timely fashion.  Based on

15  those circumstances, there was good cause for Beets not having exhausted Claim One when he filed

16  his federal petition in this court.  *See Pace*, 544 U.S. at 416.

17        In judging whether the claim is "potentially meritorious" under *Rhines*, this court applies the

18  same standard it uses to decide whether to deny an unexhausted claim under 28 U.S.C. § 2254(b)(2).

19  *See Rhines*, 544 U.S. at 277.  In both instances, the objective is to preserve the principle of comity

20  while preventing the waste of state and federal resources that occurs when a petitioner is sent back to

21  state court to litigate a clearly hopeless claim.  *Cf. Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir.

22  2005).  Claim One meets the standard because it alleges facts that raise a "colorable federal claim"

23  under *Atkins*.  *See id.*

24        Because a stay based on Claim One would extend only as long as his current *Atkins*

25  proceeding remains pending in state court, the court must also determine whether Beets can satisfy

26  the *Rhines* requirements for other unexhausted claims in his petition.  For several of his claims,

6

1    Beets argues that good cause for failure to exhaust is based on changes in the law that have occurred

2    since the conclusion of his first state post-conviction proceeding.

3            Certainly, a stay would be warranted if Beets sought to advance a claim based on a new rule

4    of constitutional law made retroactive to cases on collateral review by the Supreme Court.  *Cf.* 28

5    U.S.C. § 2244(b)(2)(A) (regarding successive petitions).  That is not the case, however, with any of

6    the claims at issue here; and, for the most part, Beets merely cites to recently-decided cases that

7    arguably lend additional merit to some of his claims.[1]  Even so, for at least one of the claims, Beets

8    makes a compelling *Rhines* showing.

9            In Claim Eight, Beets asserts that the burglary aggravating circumstance was invalid in his

10   case because the state used intent to commit murder for both the foundation for burglary and the

11   means by which to elevate the murder to capital murder.  Relying primarily on *Lowenfield v. Phelps*,

12   484 U.S. 231 (1988), the Nevada Supreme Court has concluded that it violates the Constitution "to

13   base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder

14   is predicated," because "the felony aggravator fails to genuinely narrow the death eligibility of felony

15   murderers."  *McConnell v. State*, 102 P.3d 606, 624 (Nev. 2004).  Beets argues that the theory for

16   relief he advances in Claim Eight is analytically identical to *McConnell*.

17           Based on Beets's allegations under Claim Eight, this court finds that the *McConnell* holding

18   is potentially applicable to his case.  And, because *McConnell* explicitly overruled preexisting

19   Nevada case law and announced a new basis upon which he might challenge his death sentence

20   (*Bejarano v. State*, 146 P.3d 265, 272 (Nev. 2006)), Beets can show good cause for failing to exhaust

21   Claim Eight in state court.  Although there is currently no clear controlling authority on the issue,

22

23           [1]  For example, Beets argues that *Baze v. Rees*, 128 S. Ct. 1520 (2008), "constitutes an
     intervening change in the law that provides good cause to stay the instant proceedings" because it "offers
24   a new standard under which lethal injection procedures will henceforth be examined for constitutional
     adequacy."  Docket #77, p. 32.  However, given that he presented the lethal injection claim at issue
25   (Claim Twenty) to this court several months before the case was decided, Beets clearly did not need
     *Baze* in order to advance the claim.  Thus, the purported "change in the law" brought about by *Baze* does
26   not provide Beets with good cause for failing to exhaust Claim Twenty in state court before proceeding
     in federal court.

1   most courts have concluded that the "good cause" necessary for stay and abeyance is either the same

2   as or more generous than the showing needed for "cause" to excuse a procedural default.  *See*, *e.g.*,

3   *Rhines v. Weber*, 408 F.Supp.2d 844, 849 (D. S.D. 2005) ("Supreme Court suggested a more

4   expansive definition of 'good cause' in *Pace* and *Rhines* than the showing needed for 'cause' to

5   excuse a procedural default").  Given that a showing that the factual or legal basis for a claim was

6   not reasonably available to counsel constitutes cause for the purpose of excusing a procedural default

7   (*see Murray v. Carrier*,  477 U.S. 478, 488 (1986)), it stands to reason that it would also provide

8   good cause under *Rhines*.

9           Because the claim provides Beets with at least some chance of habeas relief, Claim Eight also

10   satisfies the "potentially meritorious" standard in *Rhines*.  Moreover, the Nevada Supreme Court has

11   held that the rule announced in *McConnell* may be applied retroactively in Nevada post-conviction

12   proceedings challenging death penalty judgments that became final pre-*McConnell*.  *Bejarano*, 146

13   P.3d at 274.  In the event that it finds *McConnell* applicable, the Nevada Supreme Court will likely

14   reweigh aggravating circumstances against the mitigating evidence in Beets's case, to determine

15   whether the death penalty is justified.  *Id*. at 275-77.  Thus, comity concerns weigh in favor of the

16   Nevada courts considering Claim Eight before it is adjudicated by this court.

17           In summary, Beets had good cause for failing to exhaust potentially meritorious habeas

18   claims in state court.  In addition, the court finds that there is nothing in the record to indicate that

19   Beets has engaged in "intentionally dilatory litigation tactics" either in pursuing his claims in the

20   state courts or in this court.  *Rhines*, 544 U.S. at 277.  Thus, Beets's request for a stay and abeyance

21   shall be granted; and, respondents' motion to dismiss shall be denied without prejudice.

22           **IT IS THEREFORE ORDERED** that respondents' Motion to Dismiss Amended Petition

23   for Writ of Habeas Corpus (docket #72) is DENIED without prejudice.

24           **IT IS FURTHER ORDERED** that petitioner's Motion for Stay and Abeyance

25   (docket #77) is GRANTED.  This action is STAYED to allow petitioner to exhaust, in state court,

26   all his unexhausted claims for habeas corpus relief.

1    **IT IS FURTHER ORDERED** that, if he has not done so already, petitioner shall have **45**

2  **days** from the date of entry of this order to commence the appropriate state-court proceedings.

3  Petitioner's counsel shall seek appointment as counsel for petitioner in such proceedings.

4    **IT IS FURTHER ORDERED** that the clerk of the court shall CLOSE THIS

5  ACTION ADMINISTRATIVELY.

6    **IT IS FURTHER ORDERED** that, on or before **June 15, 2009**, petitioner

7  shall file and serve a status report, describing the status of his state-court proceedings.  Thereafter,

8  during the stay of this action, petitioner shall file such a status report every 6 months (on or before

9  December 15, 2009; June 15, 2010, etc.).  Respondents may, if necessary, file and serve a response

10  to any such status report within 15 days after its service.  If necessary, petitioner may reply within 15

11  days of service of the response.

12    **IT IS FURTHER ORDERED** that following the conclusion of petitioner's state court

13  proceedings, petitioner shall, within **30 days**, make a motion to lift the stay.

14    **IT IS FURTHER ORDERED** that this action shall be subject to dismissal upon a

15  motion by respondents if petitioner does not comply with the time limits in this order, or if he

16  otherwise fails to proceed with diligence during the stay imposed pursuant to this order.

17    **IT IS FURTHER ORDERED** that, absent extraordinary circumstances, this will be

18  the final opportunity that this court provides to petitioner to return to state court to exhaust claims

19  for habeas corpus relief.

20    DATED: January 14, 2009

21

22

  _____
  UNITED STATES DISTRICT JUDGE

23

24

25

26